IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | * CRIMINAL NO.: WDQ-09-0287 |
| JACK HARRIS, *et al*. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

AMENDED MEMORANDUM OPINION[1]

Defendant Taurus Wiggins was indicted for conspiracy to distribute heroin in violation of 21 U.S.C. § 846. Pending are Wiggins's motions for a Rule 17(c) subpoena, to suppress wiretap evidence, and for reconsideration of the Court's May 28, 2010 Memorandum Opinion and Order. The matters have been fully briefed, and no hearing is necessary. For the following reasons, the motions will be denied.

I. Background

In 2008, Baltimore Police and the Bureau of Alcohol, Tobacco, Firearms, and Explosives began an investigation of drug

---

[1] This Amended Memorandum Opinion resolves Wiggins's motion for reconsideration of his argument that wiretap evidence should be suppressed because the applicant failed to comply with the oath requirement under Md. Code Ann., Cts. & Jud. Proc. § 10-408(a)(1). That request will be denied. This Amended Memorandum Opinion also strikes subsection II.C, which addressed Wiggins's *pro se* "omnibus motion."

trafficking by the Pasadena Denver Lanes ("PDL") set of the Bloods gang. *See* Mot. to Suppress 1; Ex. A. From November 2008 to January 2009, the Circuit Court for Baltimore City authorized wiretaps of the telephones of PDL members and associates. *See id*., Exs. A-I. Wiggins was targeted and/or recorded pursuant to wiretap orders for the "B," "G," and "J" lines. *Id*. The applicant for these orders was Baltimore City State's Attorney Patricia C. Jessamy. *Id*. Each application contains Jessamy's signature or stamp; was "[s]ubscribed to and sworn before [a Circuit Judge] after the administration of [an] oath in the manner provided by law"; and contains the signature of the authorizing judge. *Id*.

Jessamy did not personally appear before the authorizing judge for all the applications. For at least two of the orders Wiggins challenges,[2] Jessamy was not present for the

---

[2] The Government submitted the affidavit of Assistant State's Attorney Staci Pipkin that Jessamy did not appear in person before the issuing judge for some of the challenged orders, but Pipkin could not recall which. Staci Pipkin Aff. ¶ 4. Wiggins moved for a Rule 17(c) subpoena compelling disclosure of Jessamy's telephone records and calendar entries for the dates on which the wiretap orders were issued. Paper No. 196.

On May 21, 2010, the Court denied the motion, but ordered the Government to specify when Jessamy did not appear in person. Paper No. 205. In a May 24, 2010 letter, the Government stated that Jessamy had not appeared in person for the December 9 and 23, 2008 wiretap orders. (Letter from Assistant United States Attorney Kwame J. Manley, May 24, 2010). On May 27, 2010, Wiggins again moved for a 17(c) subpoena, arguing that the Government's response was insufficient and that the testimony of

administration of the oath, but had reviewed and (on all but one occasion[3]) signed the applications in advance, and was placed under oath by telephone. *See* Staci Pipkin Aff. ¶ 4. When Jessamy was not present, an Assistant State's Attorney appeared before the judge. *Id.* The judge then called Jessamy, confirmed that she had reviewed the application and supporting affidavits, and administered the oath. *Id.*

Wiggins has moved to suppress the wiretaps on the ground that this procedure violated the oath requirement of the Maryland Wiretapping and Electronic Surveillance Law ("the Maryland Wiretap Act"), Md. Code Ann., Cts. & Jud. Proc. § 10-401 *et seq*. He also argues that the wiretaps must be suppressed because the

---

Jessamy and Pipkin and Jessamy's telephone records and calendar entries were necessary to determine the dates on which Jessamy did not appear before the issuing judge. Paper No. 209.

In its Order denying Wiggins's first motion for 17(c) subpoena, the Court stated that if the Government failed to specify the dates on which Jessamy had not appeared before the issuing judge, it would assume that Jessamy had not appeared for any of the challenged wiretap orders. *Id*. Although the Government should have provided an affidavit with the requested information, their failure does not entitle Wiggins to the relief he requests in his second 17(c) motion. The Court will assume, for this motion, that Jessamy did not appear for any of the challenged orders. Accordingly, Wiggins's motion for a 17(c) subpoena will be denied.

[3] On December 23, 2008, an application was sent by Federal Express to Jessamy in Georgia for her review. Jessamy then called the issuing judge's chambers to swear out the application. Assistant State's Attorneys Gioia and March, who were present in chambers, then stamped her signature on the application. Pipkin Aff. ¶ 5.

Government has not demonstrated that it complied with the Act's reporting requirement. *Id*. § 10-408(f).

II. Analysis

    A.   Section 10-408(a)'s Oath Requirement

Federal law governs the admissibility of evidence in federal criminal cases. *See, e.g.*, *United States v. Glasco*, 917 F.2d 797, 799 (4th Cir. 1990). The Federal Wiretap Act contains a narrow exception to this general rule: under 18 U.S.C. § 2516(2),

> The principal prosecuting attorney of any State or the principal prosecuting attorney of any political subdivision thereof [may apply] . . . to a [State court] judge for, and such judge may grant in conformity with [18 U.S.C. § 2518] *and with the applicable State statute* [a wiretap order].

18 U.S.C. § 2516(2) (emphasis added). Under this provision, "when a state court authorizes a wiretap . . . state wiretapping law should govern the admissibility of the wiretap evidence in federal court." *United States v. Bullock*, 2000 WL 84449, at *4 (4th Cir. Jan. 27, 2000); *see also Glasco*, 917 F.2d at 799.

Maryland law requires strict compliance with all "preconditions" for obtaining a wiretap order. *See, e.g.*, *State v. Mazzone*, 336 Md. 379, 648 A.2d 978, 979-80 (Md. 1994).[4] Failure to comply with a precondition "requires suppression of all the

---

[4] "Preconditions" are "actions that must be taken before a judge may issue a[] . . . wiretap order and the inclusion of certain provisions required to be in the wiretap order." *Mazzone*, 648 A.2d at 979.

evidence obtained under the wiretap." *Id*. at 980. One precondition is that the "application . . . shall be made in writing upon oath or affirmation to a judge of competent jurisdiction." Md. Code Ann., Cts. & Jud. Proc. § 10-408(a)(1). Wiggins contends that this section required Jessamy to take the oath in the presence of the issuing judge or to indicate in writing that she signed the application under penalty of perjury. Because she did neither, Wiggins argues that suppression is required.

As Wiggins acknowledges, the plain language of the Maryland Wiretap Act does not require the applicant to appear before the issuing judge or to submit a written statement that the application is signed under penalty of perjury. The statute merely requires that the application be made "upon oath or affirmation."[5] It is undisputed that the issuing judge administered an "oath" to Jessamy and that each order was issued "upon" that oath: the wiretap orders indicate that the applications had been "submitted and sworn to upon oath." *See, e.g.*, Mot. to Suppress, Ex. B. Thus, under the plain language of

---

[5] An oath is a "solemn[,] usually formal[,] calling upon God or a god to witness to the truth of what one says or to witness that one sincerely intends to do what one says." *Webster's Third New International Dictionary* (1981). An affirmation is "a solemn declaration made under the penalties of perjury by a person who conscientiously declines taking an oath." *Id*.

5

the statute, the oath requirement was satisfied.

Wiggins argues that under Maryland law, the requirement that a document be submitted "upon oath or affirmation" means that the document must comply with Maryland Rule of Procedure 1-304, which prescribes the form an affidavit must take to be admissible in a Maryland court. Rule 1-304 requires an "affiant" to be sworn "before" an officer authorized to administer an oath or to submit a written statement that the application is submitted under penalty of perjury.

Assuming that Rule 1-304 applies and was not followed, suppression is not required. Section 2516(2)'s requirement that a wiretap application comply "with the applicable State statute" is narrowly drawn. 18 U.S.C. § 2516(2).[6] Neither § 2516(2) nor the Fourth Circuit requires compliance with Rule 1-304; they only require compliance with Maryland wiretapping law.

Nothing in the text of the Maryland Wiretap Act or the decisions interpreting it requires strict compliance with Rule 1-304. Section 10-408(a) of the Maryland Wiretap Act--which states the requirements for the application--lists the "preconditions" for the issuance of the order, and neither Rule 1-304's requirements nor those of any other Maryland Rule of Procedure

---

[6] *See also United States v. Bullock*, 2000 WL 84449, *4 (4th Cir. Jan. 27, 2000)("When a state court authorizes a wiretap . . . *state wiretapping law* should govern the admissibility of the wiretap evidence in federal court.") (emphasis added).

are among them.[7]  If the legislature had intended that the
application strictly conform to Rule 1-304, it would have said
so.[8]

---

[7] Citing Maryland Rule 1-101(a)--which states that Title 1 of the
Rules applies to "all matters in all courts of [Maryland] . . .
except as otherwise specifically provided"--Wiggins argues that
the Maryland Wiretap Act incorporates Rule 1-304.  This argument
fails to recognize that the question before the Court is not
whether Rule 1-304 *applies* to wiretap applications--the Court
assumes it does--but whether Rule 1-304 is a "precondition" to
obtaining a wiretap order and, thus, whether failure to strictly
comply with it requires suppression.  *See, e.g.*, *Mazzone*, 648
A.2d at 979-80 (failure to strictly comply with procedural
preconditions requires suppression).  Neither the Maryland
Wiretap Act nor any Maryland state decision makes Rule 1-304--or
any other Maryland Rule of Procedure--a procedural precondition
for obtaining a wiretap order.

   Treating all the Maryland Rules as preconditions--and
requiring strict compliance with them--would unduly broaden the
Maryland Wiretap Act's exclusionary rule, which requires
suppression if "the order was not obtained or issued in strict
compliance *with this subtitle*."  Md. Code Ann. 10-408(i)(1)(ii)
(emphasis added). "Strict compliance" means that the Court "will
not abide any deviation, no matter how slight, from the
prescribed path" for obtaining wiretap orders.  *See State v.
Siegal*, 266 Md. 256, 274, 292 A.2d 86, 95 (1972).  If strict
compliance with all the Maryland Rules were required, the
application could, for example, be held invalid if it did not
contain a caption meeting the requirements of Rule 1-301(a).  *See*
Md. Rule 1-301.  There is no authority that the exclusionary rule
was intended to apply this broadly.  The Maryland Wiretap Act
requires that applications be submitted in writing upon oath or
affirmation to a judge of competent jurisdiction.  Because these
requirements were satisfied, suppression is not required.

[8] The absence of any reference to the Maryland Rules in § 10-
408(a) is significant given that § 10-408(i)--which governs
motions to suppress wiretaps--states that the "motion shall be
made in accordance with the Maryland Rules."  Md. Code Ann., Cts.
& Jud. Proc., § 10-408(i).  When the legislature includes
particular language in one section of a statute, but omits it
from another, it is presumed that the omission is intentional.
*See Miller v. Miller*, 142 Md. App. 239, 788 A.2d 717, 723 (Md.

Wiggins notes that telephonic authorizations for search warrants are not permitted under Maryland law and cites *Valdez v. State*, 300 Md. 160, 476 A.2d 1162, 1166 (Md. 1984). *Valdez*--involving officers who sought to make an affidavit and obtain a warrant over the telephone--addressed whether the judge's notes from the telephone conversation constituted an affidavit.[9] *Valdez* noted that "telephonic authorizations to search are not acceptable in Maryland." *Id*. Here, Jessamy submitted a lengthy written application and sent officers and deputies to the issuing judge's chambers to secure a written order. The difference between the procedural safeguards for defendant's privacy in *Valdez* and those in this case is stark. *Valdez* does not require suppression.

Wiggins cites several early twentieth century cases from other states holding that telephonic oaths are impermissible.

---

Ct. Spec. App. 2001). Further, "a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless." *Prince George's Co. v. White*, 275 Md. 314, 340 A.2d 236 (1975). If the Maryland Rules were implicitly incorporated as preconditions for a wiretap order, § 10-408(i)'s requirement that motions conform to the Rules would be mere surplusage. Section 10-408(a)--not Rule 1-304--states the preconditions for a wiretap application. This section requires only that the application be submitted upon oath or affirmation, which was done here.

[9] The officers later went to the judge's home to swear out the affidavit. *Id*. at 165.

*See, e.g.*, *In re Napolis*, 155 N.Y.S. 416 (N.Y. App. Div. 1915).[10]

A Second Circuit decision from around the time the Maryland wiretap statute was enacted, though not directly on point, provides useful guidance on the viability of these cases:

> In the one hundred years since Alexander Graham Bell invented the telephone, Long Distance has truly become, in the words of the well-known advertisement, "the next best thing to being there." . . .  An "Oath or affirmation" is a formal assertion of, or attestation to, the truth of what has been, or is to be said . . . .  The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to the tell the truth are more likely to do so than those who have not . . . .  We cannot accept [the Defendant's] argument that for constitutional purposes an oath or affirmation is invalid merely because it is taken over the telephone. The moral, religious and legal significance of the undertaking remains the same whether the oath taker and the witness communicate face-to-face or over the telephone.

*United States v. Turner*, 558 F.2d 46, 50 (2d Cir. 1977).  Wiggins responds to this reasoning with a dissenting opinion from the Alaska Court of Appeals.[11]

---

[10] These decisions are collected in 58 Am. Jur. 2d *Oath and Affirmation* § 18.

[11] *See Burrece v. State*, 976 P.2d 241, 245 (Alaska 1999) (Mannheimer, J., dissenting).  Decrying the majority's refusal to suppress evidence seized pursuant to a telephonic warrant, Judge Mannheimer opined that "telephonic testimony is disfavored because of the different way in which the oath is administered to the person applying for the warrant . . . .  When an oath is administered by telephone . . . there is no formal moment when the officer must stand before a public official, face to face, and formally swear or affirm that they are telling the truth." *Id*. at 249.  Wiggins's argument is actually inconsistent with Judge Mannheimer's dissent.  Judge Mannheimer believes that a

9

Jessamy's presence was not required, only her promise that the matters in the application were submitted under penalty of perjury. It is undisputed that she made such a promise for each of the applications. That the promise was made over the telephone did not render it ineffective; Jessamy swore or affirmed under penalty of perjury that the applications were true, and assumed the risk of prosecution for perjury if they were not. The purpose of an oath is to impress upon the applicant a sense of the solemnity of her promise and to ensure her accountability by imposing a sanction for false statements. These purposes were fulfilled by the administration of the telephonic oath.

In essence, Wiggins argues that the wiretaps should be suppressed because the applications did not comply with Rule 1-304. The Maryland Wiretap Act--not Rule 1-304--governs the admissibility of the wiretap evidence here. Because the wiretap applications were submitted in writing, "upon oath or affirmation," to a judge of competent jurisdiction, they met the requirements of the Maryland Wiretap Act. Accordingly, Wiggins's motion to suppress on this basis will be denied.

---

telephonic oath is inadequate because the public official is less able to assess the demeanor of the person taking the oath and thus to determine whether that person is telling the truth. Wiggins's argument is not based on the necessity for an assessment of demeanor; as he states in his motion, Jessamy's application would have been sufficient if she had merely included one of the forms of "written oaths" stated in Rule 1-304. Mot.

B. Section 10-408(f)'s Reporting Requirement

Under § 10-408(f) of the Maryland Wiretap Act, a wiretap order "shall require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception." Md. Code Ann., Cts. & Jud. Proc. § 10-408(f). "The reports shall be made at the interval the judge requires." *Id.* "[S]trict compliance with [this section] is mandated." *Baldwin v. State*, 45 Md. App. 378, 413 A.2d 246, 256 (Md. Ct. Spec. App. 1980).

Wiggins claims that the Government has not shown strict compliance with § 10-408(f) because it has not provided reports "B-4" and "B-5" (covering the period from November 30, 2008 to December 23, 2008) and "B-8" (December 28, 2008 to January 4, 2009).[12] It appears that the Government has now provided defense counsel with report "B-5."[13] The Government has also explained that reports "B-4" and "B-8" do not exist. The state labeled the reports to reflect the number of weeks the wiretap had been in place. Pipkin Aff. ¶ 6. When requests for extensions of the

---

to Suppress 1, 6.

[12] The Government has produced B-1, B-2, B-3 and B-6. See Mot. to Suppress 10 & Ex. N.

[13] Wiggins also stated that several of the reports that the Government had produced did not contain their purported attachments, including the minimization signature sheets. Mot. to Suppress 10. The Government attached the missing documents to its opposition. Govt. Opp., Exs. 4, 5, 6, 7.

11

wiretaps were filed--which are required to include a report about the results of the wiretap to that point[14]--no separate reports were made. *Id*. ¶ 6. Wiggins does not dispute the sufficiency of this procedure.

Wiggins also argues that the reports for the "G-Line" were not "made at the interval the judge require[d]." § 10-408(f). He notes that the G-Line order required the first report to be made on December 30, 2008 and every seven days thereafter. Mot. to Suppress, Ex. H. But the G-Line reports were signed by the issuing judge on December 31, 2008 and January 7, 14, and 22, 2009. *Id*., Ex. O. Thus, assuming the reports were signed by the judge on the day they were made, they were consistently late by a day or two. As Assistant State's Attorney Pipkin explained in her affidavit, the meetings at which the reports were made were often rescheduled by the presiding judge to accommodate the court's schedule. Pipkin Aff. ¶ 7. All changes to the schedule were approved by the presiding judge. *Id*. This is permissible under § 10-408 (f), which states that the "reports shall be made at the intervals the judge requires." § 10-408(f). Wiggins cites no authority to the contrary.

Because Wiggins has not shown a basis for suppression under Maryland wiretapping law, his motions to suppress and for reconsideration will be denied.

III. Conclusion

For the reasons stated above, Wiggins's motions will be denied.

June 28, 2010                                              /s/
Date                                                  William D. Quarles, Jr.
                                                       United States District Judge

---

[14] *See* Md. Code Ann., Cts. & Jud. Proc. § 10-408(a)(1)(vi).