IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA          *

      v.          *          CRIMINAL NO.: WDQ-09-0287

                         *

TAURUS WIGGINS          *

                         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Taurus Wiggins is charged with conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846. For the following reasons, his "Omnibus Pre-Trial Motion" and request to suppress evidence will be denied.

I.   Background

In 2008, Baltimore police and federal authorities began investigating drug trafficking by a set of the Bloods gang. ECF No. 223 at 1–2. On November 18, 2008, state investigators applied for a wiretap order from the Circuit Court of Baltimore City that targeted Wiggins's co-defendant. ECF No. 217 at 6. Neither the application nor subsequent order named Wiggins. *Id.*

On December 2, 2008, the investigators reported to the Circuit Court for Baltimore City that in November 2008, the target line had been called "by a person known as 'Ock,' believed to be Taurus Wiggens [*sic*]." *Id.*, Ex. 1. at 2, 8. The report noted that "Ock" "is unknown," and labeled him "Unknown Male" in

call transcripts. *See, e.g., id.* at 2-3, 8. "Unknown Male"
discussed drug trafficking. *Id.*

On December 9, 2008, the investigators applied for an order
authorizing the continued interception of the target line. *See*
ECF No. 217 at 6. Wiggins was not named in this application or
order. *See id.* The affiant "did not know [his] true identity."
Ramberg Aff. ¶ 4.

Sometime after December 9, 2008, officers confirmed that
the phone Ock used was subscribed by Wiggins's female companion.
*Id.* ¶ 5. On December 11, 2008, Wiggins provided a false name to
officers, but later acknowledged "Taurus Wiggins" as his "gov-
ernment name." *Id.* On December 26, 2008, Wiggins's name was
first revealed by a caller. *Id.* Until January 2009, the Cir-
cuit Court authorized orders under which Wiggins was recorded.
ECF No. 223 at 2.

On May 26, 2009, Wiggins and seven others were indicted for
conspiracy to distribute heroin in violation of 21 U.S.C. § 846.[1]
ECF No. 1.

On May 28, 2009, Wiggins made his initial appearance before
Judge James K. Bredar. ECF No. 20. The charges and penalties
were explained to Wiggins, who indicated that he understood. *See*
*id.*

---

[1] On April 13, 2010, a superseding indictment charged Wiggins
with conspiracy to distribute and possess with intent to dis-
tribute heroin in violation of 21 U.S.C. § 846. ECF No. 184.

On June 3, 2009, C. Justin Brown was appointed to represent Wiggins. ECF No. 42. On July 17, 2009, Wiggins, by and through Brown, moved to allow Brown to withdraw. ECF No. 75. The motion noted that Wiggins had been removed from a previous hearing after stating that he did not accept Brown's representation. *Id.* at 1–2. The motion also asserted that "Mr. Wiggins has stated on numerous occasions that he does not wish for undersigned counsel to represent him[,]" and that "[u]ndersigned counsel believes it would be virtually impossible for him to represent Mr. Wiggins[.]" *Id.*

On July 22, 2009, Judge Bredar granted the motion and questioned Wiggins:

> [Judge Bredar]: Do you want a new lawyer?
>
> [Wiggins]: [I]f you are offering a lawyer to represent me on my behalf I do not accept the Court's offer for Court appointed counsel.
>
> [Judge Bredar]: Well okay, are you saying essentially that you want to represent yourself in this matter, that you want to proceed pro se?
>
> [Wiggins]: No, that is not what I am saying. What I am saying is that if that is what you are offering then I do not accept.
>
> . . . .
>
> [Judge Bredar]: [D]o you want to represent yourself and assert your right to do so or do you want to be represented by an attorney?
>
> [Wiggins]: I do not understand the question.

> [Judge Bredar]: I am going to take that as an affirmative choice to not respond to the choice that I have put to you . . . . I am willing to appoint counsel once again[.]
>
> [Wiggins]: I will not accept the Court's offer for Court appointed counsel.
>
> [Judge Bredar]: Well, I understand your position but you have not asserted your right to represent yourself which frankly is the only way that you are going to avoid having a lawyer appointed to represent you in the case and I have given you ample opportunity to do so.

ECF No. 243 [hereinafter July 22, 2009 Hr'g] 2:12-19, 3:6-16, 15:21-16:12.

On August 6 and 7, 2009, Paul Martin Flannery and Gerard Patrick Martin were appointed as Wiggins's attorneys. ECF Nos. 95, 97. On January 13, 2010, Wiggins moved to strike them, asserting they could not provide effective assistance of counsel. ECF No. 161 at 1. On February 2, 2010, Judge Susan K. Gauvey held a hearing and denied the motion:

> [Wiggins]: [The motion to strike] doesn't say I do not want my current counsel, it says counsel period, any appointed counsel from this Court. . . . [If] they are subject to the disciplinary jurisdiction of the Court that means they have to uphold the Court's interest and that conflicts with my interest.
>
> [Judge Gauvey]: What that means is if they, for example, are convicted of a felony themselves or if they do something that is against the rules of professional conduct, not how they manage the case.
>
> . . . .
>
> [Judge Gauvey]: Do you want a lawyer or not? That is the question we are here today about.
> [Wiggins]: No I do not.

4

> [Judge Gauvey]: You do not want any attorney to represent
> you in this criminal matter?
> [Wiggins]: I didn't say that, I said I do not want a Court
> appointed counsel.
>
> . . . .
>
> [Judge Gauvey]: Okay, I am going to deny the [motion] be-
> cause there has been no indication to me that Mr. Martin
> and Mr. Flannery have acted in any way outside of your in-
> terest.  They are very experienced lawyers, particularly
> Mr. Martin has been at this Bar for an off number of years
> and I have no indication that they are not vigorously rep-
> resenting your interest as a Defendant.

ECF No. 244 [hereinafter Feb. 2, 2010 Hr'g] 8:3–21, 11:7–13, 18:25–19:7.

Trial was scheduled for June 1, 2010.

On April 1, 2010, Wiggins's then-attorneys, Flannery and Martin, moved to suppress the November 2008 to January 2009 wiretap evidence under the Maryland Wiretapping and Electronic Surveillance Act (the "Maryland Wiretap Act").[2]  ECF No. 174.

On April 9, 2010, Wiggins filed a *pro se* "Omnibus Pre-Trial Motion."  ECF No. 180.  The motion, *inter alia*, challenged the Court's jurisdiction and requested representation by Wiggins's cousin, a "notary public" and "attorney in fact in accord with a certain admiralty contract."  *Id.* at 3–4, 18.

On May 28, 2010, the Court denied the motion to suppress, and summarily denied the omnibus motion as meritless.  *See* ECF No. 223.

---

[2] Md. Code Ann., Cts. & Jud. Proc. §§ 10-401 *et seq.*

On May 30, 2010, Wiggins's then-attorneys filed a motion that (1) sought reconsideration of the denial of the April 1, 2010 suppression motion, and (2) argued a new ground for suppression. ECF No. 217.

On June 1, 2010, the morning of trial, Wiggins fired Flannery and Martin:

> [Wiggins]: Mr. Flannery and Mr. Martin are not my attorneys. I never consented to them representing me, and I don't consent to them representing me now.
>
> THE COURT: Okay. Do you want to represent yourself?
>
> [Wiggins]: Well, first, I would . . . like to know the nature and the cause of the accusation against me. I haven't been presented with any discoveries. I don't know what's going on in this case at all.
>
> . . . .
>
> MR. MARTIN: Your Honor, we have attempted on any number of occasions to go sit down with Mr. Wiggins over in District of Columbia and present the materials to him, and he has refused to see us. He says we're not his lawyers. . . . So, while we have tried to go over the discovery with him, he has refused to see us. I don't know how I could do it otherwise.
>
> . . . .
>
> [The Government]: In terms of discovery, the Government has met all of its obligations in turning over discovery to counsel for Mr. Wiggins. . . . In addition, the Government has attempted to have a reverse proffer with Mr. Wiggins where the Government was going to bring Mr. Wiggins here to Federal Court with the agents, play some of the recorded calls, share some of the details directly with Mr. Wiggins. Mr. Wiggins refused to participate, and, in addition, the agents at one time tried to go down to the facility to bring him back for this reverse proffer, and he refused to go with the agents.

. . . .

> [Wiggins]: [The Government] did not contact me to try to attempt to give me any discoveries or to attempt to deal with me personally. . . . They wanted to go through Mr. Martin and Mr. Flannery. . . . They do not represent me, so that is going [on] between them, and not me.

. . . .

> THE COURT: Mr. Wiggins, you wish to discharge counsel?
> [Wiggins]: At this time, yes.

ECF No. 236 [hereinafter June 1, 2010 Hr'g] 2:22-3:19, 5:21-23, 8:19-9:1, 9:17-23, 11:18-20.

Flannery and Martin were discharged, and trial was rescheduled for January 3, 2011. *Id.* at 11:21-22, 15:5-17. The Court directed Flannery and Martin to "prepare an inventory of the materials you have given and will be giving to Mr. Wiggins." *Id.* at 13:20-24. The Court also explained to Wiggins the difficulties of self-representation and the advantages of counsel.[3]

On June 3, 2010, the summary denial of Wiggins's Omnibus Pre-Trial Motion was vacated. ECF No. 220. On June 17, 2010, Flannery and Martin sent a letter to the Court listing the paper and audio discovery they had provided to Wiggins. ECF No. 240, Ex. 1 at 1-6.

---

[3] *See id.* at 16:10-17. After Wiggins expressed difficulty in understanding a legal rule, the Court stated that it "was not permitted to give legal advice," and that interpreting legal rules is challenging for civilians and best left to attorneys, such as the ones Wiggins had just fired. *Id.*

On June 28, 2010, the Court denied the portion of the May 30, 2010 motion seeking reconsideration of the denial of the April 1, 2010 suppression motion; the Government was directed to respond to the new suppression argument. *See* ECF No. 223.

On November 19, 2010, Charles N. Curlett was appointed as Wiggins's stand-by counsel. ECF No. 230.

On December 16, 2010, the Court held a hearing to (1) decide Wiggins's *pro se* Omnibus Pre-Trial Motion, and (2) determine whether he was asserting the right to self-representation and could proceed *pro se* at trial. *See* ECF No. 245 [hereinafter Dec. 16, 2010 Hr'g]. Wiggins asked for his uncle, who was not at the hearing, to represent him. *Id.* at 16:17–21. Although Wiggins's motion had identified his uncle as a "notary public" and "attorney in fact," ECF No. 180 at 18, Wiggins stated at the hearing that his uncle is a licensed practicing attorney and former Baltimore City public defender, Dec. 16, 2010 Hr'g 16:7–21. At this point, Curlett, who was present, interjected:

> I feel it is incumbent upon me to inform the Court that Mr. Wiggins'[s] uncle telephoned me approximately one week ago.
>
> . . . .
>
> Mr. Wiggins'[s] uncle informed me that he had been requested by Mr. Wiggins to enter an appearance on his behalf. I am unaware whether Mr. Wiggins'[s] uncle . . . is an attorney, ever served as a defense attorney, but my conversation with him led me to believe that he holds the same or would likely assert the same jurisdictional arguments should he ever appear in this [C]ourt. I informed Mr. Wiggins'[s] uncle of the date and time and location of this proceeding

today, and invited him to attend if he wanted to be present
and be heard before the Court.

*Id.* at 17:17–19, 18:4–14.

Wiggins's uncle does not appear in the Maryland, District
of Columbia, or Virginia Bar listings.[4]

As the hearing continued, the Court asked Wiggins about,
*inter alia*, his education, mental health history, knowledge of
the Federal Rules of Evidence and Criminal Procedure, and
whether he had represented himself before.  Dec. 16, 2010 Hr'g
32:16–39:3.  Wiggins replied, "Why are you asking me these
questions?"  *Id.* at 34:24–25.  He also asserted that he "did not
feel comfortable with this line of questioning," and that he did
not "stand under" the questions.  *See id.* at 24:10–12, 34:7–9.

After thoroughly explaining the charges, possible penal-
ties, and risks of self-representation, Dec. 16, 2010 Hr'g
35:24–40:14, the Court stated:

> THE COURT: I advise you that, in my opinion, a trained
> lawyer would defend you far better than you could defend
> yourself or anyone untrained in the law could defend you.
> I think it is unwise of you to try to represent yourself.
> You don't appear to be familiar even with the law or with
> the procedure.  You don't appear to be familiar with the
> Rules of Evidence.  I strongly urge you not to try to
> represent yourself or to attempt representation by someone
> who is not a licensed attorney.  In fact, that person would

---

[4] *See* Maryland Judiciary Attorney Listing, http://www.courts.
state.md.us/cpf/attylist.html (last visited Feb. 22, 2011);
District of Columbia Bar Member Search, http://www.dcbar.org
/find_a_member/index.cfm (last visited Feb. 22, 2011); Virginia
State Bar Lawyer Directory, http://206.113.151.134/attsearch/
search.aspx (last visited Feb. 22, 2011).

not be permitted to represent you in court. In light of
the penalty that you might suffer if you're found guilty
and in light of all the difficulties of representing
yourself, do you want to represent yourself and give up
your right to be represented by a licensed attorney?

*Id.* at 40:15–41:3.

Wiggins replied that he did "not waive any of [his] rights,"
and was not prepared to go to trial. *Id.* at 41:4–7. A new
trial date has not been set.

On January 6, 2011, the Government opposed Wiggins's Omni-
bus Pre-Trial Motion and the new suppression argument in the May
30, 2010 motion. ECF No. 240.[5]

## II. Analysis

### A. Wiggins's *Pro Se* Omnibus Pre-Trial Motion

Wiggins's omnibus motion and new *pro se* arguments at the
accompanying hearing (1) challenge the Court's jurisdiction, (2)
allege lack of discovery, (3) seek to dismiss the indictment,
(4) challenge the Grand Jury array and his arrest warrant, (5)
seek to disqualify the Judge, and (6) assert miscellaneous argu-
ments. *See generally* ECF No. 180; Dec. 16, 2010 Hr'g.[6]

---

[5] The Court directed that any reply should be filed by January
17, 2011. ECF No. 241. No reply has been submitted.

[6] Wiggins's motion also requested that his uncle represent him,
ECF No. 180 at 18, which will be discussed in Part II.B.

1. Jurisdictional Challenges

Wiggins asserts that this is an admiralty case and the Court lacks "criminal jurisdiction" over him. ECF No. 180 at 3–4. He also appears to argue that his charge arose from a "local transaction" subject to state or concurrent jurisdiction, and that his prosecution was not properly "removed" to this Court. Dec. 16, 2010 Hr'g 21:14–27:5, 32:7–15.

"Jurisdiction" has different meanings. Subject matter jurisdiction is a court's "statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Territorial jurisdiction means that a court may only rule on a case when the offense is committed within its geographic territory.[7] Further, a criminal case involves prosecution and punishment, while a civil action merely threatens economic loss. *McKinney v. Alabama*, 424 U.S. 669, 686 (1976).

Because Wiggins has been criminally charged with violating the federal Controlled Substances Act,[8] only a federal--not

---

[7] Annotation, *Necessity of Proving Venue or Territorial Jurisdiction of Criminal Offense Beyond Reasonable Doubt*, 67 A.L.R.3d 988 § 10 (2011).

[8] 21 U.S.C. § 801 *et seq.* The statute was properly enacted under Congress's Commerce Clause power. *Gonzales v. Raich*, 545 U.S. 1, 15 (2005).

state--court has the exclusive power to adjudicate the case.[9]

This Court has territorial jurisdiction because the offense was committed within this District.[10]  This is not a removal matter.[11]

Further, admiralty law applies to torts committed "on navigable waters" that arose during "traditional maritime activities." *Matios v. Larimer Cnty. Justice Ctr.*, No. 10-cv-01774-BNB, 2010 WL 3843477, at *2 (D. Colo. 2010).  This is not an admiralty case.  Wiggins's citations to *The Huntress*, 12 F. Cas.

---

[9] *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States."); 21 U.S.C. § 841(a) (it is "unlawful" to knowingly or intentionally distribute or possess with intent to distribute a controlled substance); 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense[.]").

[10] *See* ECF No. 184 (superseding indictment stating that "[i]n or about November 2008 until in or about January 2009, in the District of Maryland," Wiggins conspired to distribute and possess with intent to distribute heroin (*citing* 21 U.S.C. §§ 841(a), 846)).

[11] Wiggins's "removal" arguments are based on his misunderstanding of 28 U.S.C. § 1446(a), which provides the "procedur[e] for removal," and Fed. R. Crim. P. 1(a)(4), which applies the Federal Rules of Criminal Procedure to "all proceedings after removal from state court." *See* Dec. 16, 2010 Hr'g 25:5-14, 26:7-13.  A state criminal prosecution may be removed to federal court if the defendant is a federal officer who allegedly committed a state criminal offense while performing his federal duties.  28 U.S.C. § 1442(a).  This procedure provides the federal government with a "federal forum in which to assert federal immunity defenses." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007).  As Wiggins is not a federal officer charged with a state crime, 28 U.S.C. § 1446(a) and Rule 1(a)(4) have no bearing on this prosecution.

984, 993 n.8 (D. Me. 1840), which discusses "revenue seizures made on the water," and 18 U.S.C. § 7, which defines "special maritime and territorial jurisdiction," are immaterial. *See* ECF No. 180 at 4; Dec. 16, 2010 Hr'g 21:21-23. These authorities exemplify the "obsolete" and "misplaced" sources upon which Wiggins relies; such tactics serve only to disrupt proceedings.[12]

This Court has original federal criminal jurisdiction over Wiggins.

2. Discovery

Wiggins asserts that he has not been provided with discovery. *See* ECF No. 180 at 8-15; Dec. 16, 2010 Hr'g 33:18-19. The Government asserts that before the original June 1, 2010 trial date, it gave Wiggins's then-attorneys recordings, expert and chemical analysis reports, Grand Jury testimony, *Giglio* and *Jencks* information, and "all other material subject to disclosure." ECF No. 240 at 2. It appears that Wiggins initially

---

[12] *United States v. Mitchell*, 405 F. Supp. 2d 602, 605-06 (D. Md. 2005). In *Mitchell*, defendants charged with federal racketeering refused to "consent" to prosecution and asserted that the indictment "fail[ed] to properly represent them as 'flesh and blood' men" because their names were printed in capital letters. *Id.* at 603. The Court, which "clearly ha[d] jurisdiction over the defendants and [their] criminal charges," rejected these "[b]izarre and misguided contentions," and warned the defendants to stop their disruptive behavior. *Id.* at 605-06; *see also* State Justice Institute, *Anti-Government Movement Guidebook* 78 (1999) [hereinafter *Guidebook*] (explaining disruptive defendants' use of "leftover concepts from early legal doctrines" and "misplaced quotes").

refused to review discovery,[13] but now has received it, *see id.*,
Ex. 1 (June 17, 2010 letter to the Court from Wiggins's dis-
charged attorneys listing the discovery they sent him).  Wiggins
has not disputed the Government's observation that he "clearly
had the discovery [at the December 16, 2010 hearing], as he
brought to Court a large trash bag filled with discovery docu-
ments, [so] his discovery request is now moot."  ECF No. 240 at
2.[14]

    3. Motion to Dismiss the Indictment

    Wiggins moved to dismiss his indictment, asserting without
elaboration that it was "secured by fraud . . . in conspiracy to
violate [his] civil rights," and that he "does not consent to
be[ing] charged."  ECF No. 180 at 5–6; Dec. 16, 2010 Hr'g 50:22–23.

---

[13] *See, e.g.*, June 1, 2010 Hr'g 3:11-19 (Wiggins's then-attorneys
stating that they had "tried to go over the discovery with
[Wiggins, but] he ha[d] refused to see" them); *id.* at 8:19-9:9
(the Government's assertion that it had "attempted to have a
reverse proffer with Mr. Wiggins," who "refused to partici-
pate"); *id.* at 9:17–23 (Wiggins's statement that the Government
"wanted to go through [his then-attorneys]," so disclosure was
"going [on] between them, and not [him]").

[14] In fact, Wiggins brought to Court two large trash bags filled
with legal materials; one bag was graciously carried for him by
a Deputy United States Marshal.
    The Court has permitted the Government to withhold cooper-
ating witness information because of safety concerns.  June 1,
2010 Hr'g 19:13–20.  Although this information need not be dis-
closed until after direct examination, 18 U.S.C. § 3500(a), the
Government has agreed to "provide said documents to Wiggins on
the first day of trial before jury selection," ECF No. 240 at 3.

Wiggins need not consent to prosecution. "[I]t is hard to imagine that any indicted defendant would 'consent' to any proceedings against him[;] the entire federal criminal code would be pointless." *Mitchell*, 405 F. Supp. 2d at 604. Further, to dismiss an indictment, Wiggins would have to show that the allegations, even if true, would not state a charge. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). Here, the allegations in the superseding indictment, if true, state a drug conspiracy offense.[15] Wiggins's conclusionary allegations that the indictment is fraudulent and violates his rights are unavailing. This motion must be denied.

4. Challenges to the Grand Jury Array and Arrest Warrant

Wiggins challenges the array of the Grand Jury by asserting that it heard an officer's summary interpretation of the wiretap evidence instead of factual allegations. Dec. 16, 2010 Hr'g 50:2-20. To challenge the Grand Jury array, the defendant must assert that the Grand Jury was not "lawfully drawn, summoned, or selected," Fed. R. Crim. P. 6(b)(1), which Wiggins has not done. To the extent he suggests that the Grand Jury improperly considered the officer's summary of the calls obtained by wiretap,

---

[15] *See* ECF No. 184 (superseding indictment charging Wiggins with conspiracy to distribute and possess with intent to distribute heroin (*citing* 28 U.S.C. §§ 841(a), 846)); 21 U.S.C. § 841(a) (prohibiting any person from distributing or possessing with intent to distribute a controlled substance); 21 U.S.C. § 846 (prohibiting any person from conspiring to violate § 841).

grand jurors may rely on hearsay.  *United States v. R. Enters.,*
*Inc.*, 498 U.S. 292, 298 (1991).  Indeed, because the Grand Jury
merely determines whether there is probable cause to prosecute a
defendant, its sources of information are "widely drawn, and the
validity of an indictment is not affected by the character of
the evidence considered."  *Id.; United States v. Calandra*, 414
U.S. 338, 345–46 (1974).

     After indictment, Wiggins was arrested on a bench warrant.
*See* ECF Nos. 1 (indictment), 17 (bench warrant).  He asserts
that his arrest was invalid because there was no return of ser-
vice on the warrant.  Dec. 16, 2010 Hr'g 48:7–11.  The Fourth
Circuit has rejected similar objections to "ministerial" er-
rors.[16]  Further, even an insufficient warrant does not invalid-
date an arrest if probable cause exists, *see United States v.*
*White*, 342 F.2d 379, 381 (4th Cir. 1965); Wiggins has not shown
that his indictment was based on insufficient probable cause.

     His challenges must be rejected.

     5. Motion to Disqualify the Judge

     At the hearing, Wiggins moved to disqualify the Judge under
28 U.S.C. § 454, asserting that because the Judge is "named in
[the omnibus motion]," he has a "personal interest in this

---

[16] *See, e.g.*, *United States v. Weaver*, 15 F. App'x 55, 56 (4th
Cir. 2001) (inadequate signatures on arrest warrant and return
would not have invalidated conviction).

case." Dec. 16, 2010 Hr'g 12:15–17; *see* ECF No. 180 at 2–3 ("incorporating" the omnibus motion against, among others, all Judges "assigned to [this District]"); *id.* at 7 ("counterclaiming" against the Judge, Magistrate Judges, and prosecutors for, *inter alia*, "maintaining this fraudulent complaint"). The motion was denied at the hearing. Dec. 16, 2010 Hr'g 12:18.

Section 454 provides that a federal judge who "engages in the practice of law is guilty of a high misdemeanor." 28 U.S.C. § 454. This has not happened; in fact, when Wiggins asked a legal question at the June 1, 2010 hearing, this Court replied, "I'm not permitted to give legal advice. That's what lawyers are for." June 1, 2010 Hr'g 16:16–17.

A federal judge must disqualify himself when "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This objective standard asks whether a "reasonable, well-informed observer who assesses all the facts and circumstances" would question a judge's impartiality. *United States v. DeTemple*, 162 F.3d 279, 286–87 (4th Cir. 1998). That the Judge has been mentioned in a meritless motion does not warrant recusal. Wiggins's disingenuous disqualification attempts reveal his intent to delay trial and "disrupt judicial administration."[17]

---

[17] *Wilks v. Israel*, 627 F.2d 32, 36–37 (7th Cir. 1980) (trial judge properly refused to recuse himself from case where defendant "acted uncooperatively during pretrial proceedings and repeatedly attempted to have the trial judge removed from the

6. Miscellaneous Arguments

Wiggins "counterclaims" against the Judge, Magistrate Judges, and prosecutors for "fraud, kidnapping, involuntary servitude, peonage, and unjust enrichment." *Id.* at 6. Counterclaims are, of course, unavailable in criminal cases. *See* Fed. R. Civ. P. 1; *supra* Part II.A.1.

Wiggins also summarily cites the Constitution, the Federal Rules of Civil Procedure, the Maryland Declaration of Rights, the common law of England, and irrelevant cases and statutes.[18] ECF No. 180 at 4–5, 17. These inapplicable sources do not "raise a valid legal issue."[19]

---

case"); *see also Guidebook*, *supra*, at 75 (disqualification attempts merely delay proceedings and frustrate judges and judiciary staff).

[18] For example, Wiggins cites *Erie Railroad Co. v. Tompkins*, which held that a federal court sitting in diversity jurisdiction--a civil procedure doctrine--must apply state law. 304 U.S. 64, 78 (1938); ECF No. 180 at 5; Dec. 16, 2010 Hr'g 4:2-3. *Erie* is irrelevant to this criminal case.
  Wiggins also erroneously cites 28 U.S.C. § 3002(15) to support his assertion that the United States is a corporation. Dec. 16, 2010 Hr'g 28:11-21. That statute governs the collection of federal debt. *See* 28 U.S.C. § 3001. Section 3002(15) merely provides that the term "United States," when used "*in this [statute]*," refers to a federal corporation, agency, entity, or instrumentality. *Id.* § 3002(15).

[19] *El Bey v. Davis*, No. 0:05-3461-SB, 2006 WL 1576642, at *1-*2 (D.S.C. May 24, 2006) (dismissing as frivolous a complaint that alleged plaintiff had been "arrest[ed] without proper jurisdiction," and that cited irrelevant statutes and constitutional amendments); *see also Guidebook*, *supra*, at 55 (a defendant's "imprecise mixture" of legal principles should be rejected).

A criminal defendant's irrational jurisdictional objections have "never proven effective." *Mitchell*, 405 F. Supp. 2d at 605-06. As it is meritless, Wiggins's Omnibus Pre-Trial Motion will be denied.

B. Right to Self-Representation

On December 16, 2010, after hearing Wiggins's arguments on his omnibus motion, the Court attempted to determine whether he wanted to represent himself as he has fired all his appointed attorneys. The assertion of a Sixth Amendment right to self-representation must be "clear and unequivocal," and "knowing, intelligent[,] and voluntary." *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000) (*citing Faretta v. California*, 422 U.S. 806, 835 (1975)). These requirements prevent a defendant from taking advantage of the "mutual exclusivity" of the rights to counsel and self-representation. *Id.* at 559-61. In an ambiguous situation, the court must "ascribe a constitutional primacy to the right to counsel" because this right, which preserves "both the individual and collective good," outweighs the defendant's interest in acting as his own attorney. *Id.*

1. Wiggins's Assertion Was Not Clear and Unequivocal

In determining whether a self-representation assertion is clear and unequivocal, the court considers whether the defendant "sincere[ly] desire[s] to dispense with the benefits of coun-sel," or is simply trying to manipulate and delay the trial

proceedings.  *United States v. Bush*, 404 F.3d 263, 271 (4th Cir. 2005) (citation and internal quotation marks omitted).

Wiggins has refused to state whether he wants to proceed *pro se* or be represented by a licensed attorney.[20]  In his omnibus motion and at the accompanying hearing, he requested that his uncle represent him.  ECF No. 180 at 18; Dec. 16, 2010 Hr'g 16:19-21.  His uncle--who was originally identified in Wiggins's omnibus motion as a "notary public" and "attorney in fact"--is not a member of the Maryland, District of Columbia, or Virginia Bar.[21]  There is no Sixth Amendment right to be represented by a non-lawyer.[22]

Wiggins has also consistently attempted to avoid trial. Asserting that he "never asked" for his attorneys, Wiggins fired them the morning of the June 1, 2010 trial.  June 1, 2010 Hr'g 4:2-3.  Trial was re-scheduled for January 3, 2011.  *Id.* at

---

[20] *See* July 22, 2009 Hr'g 15:19-24 (refusing to answer when asked whether he wanted to represent himself or have an attorney); Feb. 2, 2010 Hr'g 11:7-13 (stating he did not want an attorney, but failing to assert the right to self-representation); June 1, 2010 Hr'g 6:15-20 (stating that he had to "decide" whether he needs Court-appointed counsel or will represent himself).

[21] *See* discussion *supra* pp. 8-9.

[22] *See, e.g.*, *Tebbets v. Allenbrand*, 986 F.2d 1429, 1429 (10th Cir. 1993) (because there is no constitutional right to legal assistance by a lay person, district court did not violate defendant's Sixth Amendment right to counsel by refusing to allow a non-lawyer to represent him).  Further, a defendant's desire to be represented by a non-lawyer may be an "attempt to delay the proceedings." *Guidebook*, *supra*, at 69.

15:5–17.  At the December 16, 2010 hearing, the Court asked,

"Mr. Wiggins, are you prepared to go to trial on January 3rd?"

Dec. 16, 2010 Hr'g 47:11–12.  Wiggins replied, "No."  *Id.* at

47:13.  The right to self-representation "does not exist . . .

to be used as a tactic for delay [or] disruption."  *Frazier-El*,

204 F.3d at 560.

Thus, Wiggins has not clearly and unequivocally invoked his
self-representation right.

2. Wiggins Has Not Knowingly and Intelligently Asserted His
   Right to Self-Representation

In evaluating whether a defendant's assertion of his right

to self-representation is "knowing and intelligent," the court

must warn him about the dangers of proceeding *pro se*, inquire

into his background, and determine whether he understands court-

room procedures and rules.[23]  At the hearing, the Court explained

the risks of self-representation to Wiggins, and asked him about

his personal history and legal knowledge, if any.  Dec. 16, 2010

Hr'g 32:16–41:3.  Wiggins refused to answer and attempted to

cross examine the Court, *id*. at 24:10–12, 34:7–9, 24–25, which

suggests the intent to delay proceedings.[24]

---

[23] *Faretta v. California*, 422 U.S. at 835; *United v. Gerritsen*,
571 F.3d 1001, 1008 (9th Cir. 2009); *Meriwether v. Chatman*, 292
F. App'x 806, 806 (11th Cir. 2008).

[24] *See United States v. Mosley*, 607 F.3d 555, 559 (8th Cir. 2010)
(district court properly denied self-representation right of de-

That Wiggins has vacillated as to whether to proceed *pro se* or with a licensed attorney, and has refused to answer questions to help determine his self-representation abilities, reveals the effort to frustrate the "integrity and efficiency" of the proceedings.[25]  Wiggins has not knowingly and intelligently asserted his self-representation right.  To the extent that Wiggins has requested to represent himself, that is denied, and he will be represented at trial by a licensed attorney.

C. Request to Suppress Wiretap Evidence

Before being fired, Wiggins's attorneys sought to suppress wiretap evidence because Wiggins was not named in the November and December 2008 wiretap applications and orders.  *See* ECF No. 217 at 5–7.[26]

---

fendant who refused to answer questions at a competency hearing and asserted that he was a "flesh and blood breathing man[,] not a corporation").

[25] *Frazier-El*, 204 F.3d at 559-61 (district court properly denied right to self-representation when defendant fluctuated between invoking his self-representation right and requesting an attorney willing to make frivolous arguments); *see also United States v. Singleton*, 107 F.3d 1091, 1102 (4th Cir. 1997).

[26] This new argument was embedded in a motion for reconsideration, which was denied in part on June 28, 2010.  ECF No. 223. On January 6, 2011, the Government opposed this argument.  ECF No. 240.

1. Maryland and Federal Wiretap Law

A wiretap order issued by a state court[27] must comply with the Federal Wiretap Act[28] *and* the applicable state statute. 18 U.S.C. § 2516(2). After a state court authorizes a wiretap order, state law will "govern the admissibility of evidence in federal court." *United States v. Bullock*, No. 95-5983, 2000 WL 84449, at *4 (4th Cir. 2000).

Maryland requires "strict" compliance with the Maryland Wiretap Act's preconditions for obtaining a wiretap order. *State v. Mazzone*, 336 Md. 379, 383, 648 A.2d 978, 980 (1994). Failing to comply with a precondition requires "suppression of all the evidence obtained under the wiretap." *Id.* One precondition is that the wiretap application and interception order state "the identity of the person, if known, committing the offense and whose communications are to be intercepted."[29]

Under the Federal Wiretap Act, which contains an identical provision,[30] a wiretap application must name an individual if the Government has probable cause that (1) he is "engaged in the

---

[27] The Circuit Court for Baltimore City authorized the wiretap orders at issue. ECF No. 223 at 2.

[28] 18 U.S.C. § 2510 *et seq.*

[29] Md. Code Ann., Cts. & Jud. Proc. § 10-408(a)(1)(ii)(4), (d)(1)(i).

[30] *See* 18 U.S.C. § 2518(1)(b)(iv) (wiretap applications "shall include . . . the identity of the person, if known, committing the offense and whose communications are to be intercepted").

23

criminal activity under investigation," and (2) his conversa-
tions will be intercepted.  *United States v. Donovan*, 429 U.S.
413, 428 (1977).  Failing to comply with this provision does not
compel suppression.  *Id.* at 434–45.

2. The Parties' Arguments

Wiggins asserts that the calls transcribed in the December
2, 2008 wiretap report gave the Government probable cause that
(1) he was involved in the conspiracy, and (2) his conversations
would be intercepted over the target line.  ECF No. 217 at 6.
He asserts that the investigators should have identified him in
the December 9 and the November 18, 2008 applications and orders
if his criminal activity was known then.  *Id.* at 7.  Because
Wiggins was not named, he asserts that the wiretap evidence must
be suppressed under the Maryland and/or Federal Wiretap Act.
*See id.*

The Government asserts that Wiggins's identity was unknown
on or before December 9, 2008.  *See* ECF No. 240 at 3–4.

3. The Evidence Need Not Be Suppressed

The Maryland Wiretap Act requires a wiretap application and
order to identify a person "if known."[31]  The December 2, 2008
report notes that the target line was intercepted by an Inter-
national Mobile Subscriber Identity "utilized by a person known

---

[31] Md. Code Ann., Cts. & Jud. Proc. § 10-408(a)(1)(ii)(4),
(d)(1)(i).

24

as 'Ock,' believed to be Taurus Wiggens [*sic*]." ECF No. 217, Ex. 1 at 2, 8. However, the report describes that subscriber as "unknown at this time," and labels him "Unknown Male" in the call transcripts. *Id.* at 2-3, 8. The affiant for the December 9, 2008 application has testified that (1) he "did not know the true identity of the phone user for the [International Mobile Subscriber Identity]" when applying, (2) after December 9, 2008, investigators learned that the subscriber was Wiggins's female companion, (3) Wiggins provided a false name to officers who stopped him on December 11, 2008, and (4) only on December 26, 2008 did a caller reveal Wiggins's name. Ramberg Aff. ¶¶ 3-5. Wiggins's identity was not "known" on or before December 9, 2008; the evidence need not be suppressed under the Maryland Wiretap Act.[32]

The November and December 2008 applications and orders did not violate the Federal Wiretap Act. *See* 18 U.S.C. § 2518(1)(b)(iv). Even if the calls gave investigators probable cause that "Unknown Male" was part of a conspiracy, *see Donovan*, 429 U.S. at 428, the un-contradicted evidence is that they did not know that "Unknown Male" was Wiggins when applying for the

---

[32] *Cf. Salzman v. State*, 49 Md. App. 25, 37-40, 430 A.2d 847, 855-57 (1981) (applicant who had no actual knowledge of a prior wiretap application did not violate precondition requiring disclosure of prior applications "known" to the applicant (*citing* Md. Code Ann., Cts. & Jud. Proc. § 10-408(a)(5))).

orders.  *See* ECF No. 217, Ex. 1 at 2-3, 8; Ramberg Aff. ¶¶ 3-5. Further, had the omission of Wiggins's identity violated the Federal Wiretap Act, suppression would not be required.[33]

Accordingly, the request to suppress evidence must be denied.

III. Conclusion

For the reasons stated above, Wiggins's omnibus motion and request to suppress evidence will be denied.  His request to represent himself will be denied, and he will be represented at trial by appointed, licensed counsel.

| February 28, 2011 | _____/s/_____ |
|---|---|
| Date | William D. Quarles, Jr. |
| | United States District Judge |

---

[33] *Donovan*, 429 U.S. at 434-35 ("[T]he failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization.").